Good morning, Your Honors. My name is Barbara Lyons. I'm with the firm of Cotchette, Petrie, Simon & McCarthy. We represent T&E Pastorino Nursery, and I am speaking on behalf of all of the plaintiffs' high felons this morning. The Ninth Circuit has now had— You want to keep that kind of close because, you know, we record everything. Thank you. So, as I should say, you're on the air. Thank you. I'd like to reserve for myself about seven minutes at the end of my argument. I think that this matter probably will be relatively brief this morning. The Court has heard now in three different cases on the scope of FERC tariffs, the Cal-ISO tariff and the Cal-PX tariff, and the federal preemption doctrines that inform removal, jurisdiction, and dismissal. The Pastorino and related complaints are distinct from the complaints in Deinergy in that they allege a course of conduct, a fraudulent, unlawful, and unfair course of conduct. In Deinergy, there was a single allegation of double-selling. In other words, it was, did you double-sell or did you not double-sell? While that allegation related to the terms of the tariff, it also related to nothing else. Here, Pastorino and the other plaintiffs allege a course of conduct of withholding capacity, of outrageous bidding, of concerted action designed to benefit from the run-up in prices. Therefore, it is not exclusively a question of whether what they did nominally violated a federal tariff. The question is, did what they do violate California law? Was it unfair? Was it fraudulent? Was it illegal? But that's – I mean, you realize that you have a big problem in terms of this, given all the work that's under the bridge since you wrote your briefs. And I'm having a hard time seeing the distinction because, if anything, I would think would run in the other direction. That is, if you have a pattern of activity, various pieces of which violate the tariff, you'd think that would be more of a federal problem, not less of one. The distinction is that the connection between trying to enforce a tariff provision and trying to enforce a State ethical law, ethical norm, is clearer in Pastorino than it was in Deinergy. It's a matter of degree. It is a matter of degree, but it's a degree that makes a difference. Deinergy compares in a way to Sparta in that the only thing going on was an alleged tariff violation. That's what they alleged, and they said that – Kagan. They also alleged a violation of 17200 because they were selling the same energy twice, and here you just have them doing it lots of times. They were alleging different forms of conduct, and were alleging a meeting of minds between persons who all had an obligation to uphold the public interest in their sales of energy, who decided instead to join together and profiteer at the expense of the public, and that's not what public utilities exist for the purpose of doing. Now, I'm saying that in Deinergy, my understanding was it was still – the allegation was essentially parallel. It was simply not – maybe less of it, but I'm having a hard time understanding why that isn't as much a violation of the California statute if it's a violation. And then there's the problem here isn't that this isn't a violation of the California statute, what you're alleging. It's that even if it's a violation of the California statute, it's federally preempted, is what the – our recent cases have said. I believe the recent cases would have come down differently had they looked at the tariff language in more detail. And particularly – That's a different problem. That's a different problem. I mean, that's not the problem, isn't it? They could be wrong, but that's not our problem right now. Right. The difference between Deinergy and Pastorino is that we allege separate forms of misconduct. Our paragraph 55, I believe, is comparable to the State's paragraph. Basically, we paraphrase it. We allege the same form of conduct. But we also allege that they got together, they withheld capacity to drive up the price of energy. They overbid, knowing that no one would accept the bid to create the appearance of shortage of supply. And then they took advantage of what they had done, locking California consumers into the long-term contracts, some of which are the subject of the later discussion this morning. So the distinction with Deinergy, in addition to the issue of the tariff context, which contains a choice of law clause, and I think is far more compelling, is that there's a broader scope of conduct involved. Now, with respect to the tariff itself, you received several hundred pages of mathematic formulations, discussions of how bidding conduct was supposed to be conducted, from the other side, the choice of law provisions of the tariff. And those, I believe, are the most compelling part of the story here, because they clearly indicate that Burke understood in approving the tariff that there would be disputes with respect to the tariff and the conduct engaged in by parties to the tariff that would not be within its rate — within the scope of its ratemaking authority. So there are immunity provisions that go to the issue of negligence. There are contract enforcement provisions as between the parties. There is an alternative dispute resolution provision that provides for the arbitrator to decide, if appropriate, under California law. In other words, we have a situation where the field isn't preempted and we have nothing in the tariff that either side has given you that says that anything that we've said they did wrong, Burke said they could do. The long list of administrative proceedings, in fact, and the orders to show cause anomalous gaming behavior, the report on the manipulation of the Western energy markets clearly demonstrate that what they were doing was not permitted by the tariff. Therefore, it's hard to say that the Federal Power Act deprives California retail consumers of a right of action under California law. I wanted to call attention to a previous question. Kagan. Where is the tariff in your excerpts? I can't find it. We asked you to take judicial notice of provisions of the choice of law clause in the same manner as the Respondents asked you to take judicial notice of the market operation provisions. With respect to Grace Harbor and Snohomish, the other two more recent opinions, one of the grounds for decision was that the complaints explicitly asked for remedies that would have required the court to posit a hypothetical just and reasonable rate. Our complaints do not do that. They ask for a disgorgement remedy, which may be the profits of the energy companies. In the case of RJL, it asks for antitrust damages under California law, and those damages can either be assessed with reference to the refund liabilities and the refund action. So we see a distinction there. The duty to refrain from engaging in manipulative, deceptive, fraudulent, unfair conduct is a duty that arises under California law. There is a corresponding duty under the tariff, but that is not the exclusive source of the legal duty to behave ethically as public utilities whose existence is for the benefit of the public to provide the required commodity of energy. I'd also like to bring the panel's attention to the Fedor opinion, because it contains some compelling reasoning on the question of whether, when you're looking at remedies for unfair conduct, you must necessarily determine that the action is preempted if the conduct, if the entity is governed by the tariff. And the question there is whether the claim necessarily treads upon a federally reserved area. In other words, whether the court has to address the reasonableness of the rates charged. And in this case, no California court is going to have to address the reasonableness of the rates charged, because in the case of the CalPX and CalISO rates, we already know that they weren't. FERC decided that four years ago. But in order to get damages, you have to find out what would have been reasonable now. Well, it depends on how you measure the restitutionary remedy under Section 17-200. And then with respect to the Cartwright Act claims, as I've mentioned before, what would likely happen would be that the – there would be an offset considered for the amount of refunds paid pursuant to FERC orders. And as we know – Then you're basically providing an additional remedy for a FERC order, which is also preempted ordinarily. That if a Federal statute has a remedial provision and the State is trying to piggyback and provide an additional remedy for the same wrong, that's also usually preempted. Well, I don't believe so, because the difference here is that you're looking at injured retail consumers whose only right of action is under the California law, because the Federal Power Act provides them no – no cause of action. And there's an important policy reason to allow a – a Cartwright Act claim to go forward  You have a fixed – But isn't the assumption of the recent cases that it doesn't – the Federal – where the Federal Power Act doesn't provide a remedy, it's because it doesn't mean there to be a remedy. And for a State to come wandering in and providing a remedy is essentially inconsistent with the Federal statute. Well, it is inconsistent with the Federal statute to try to occupy a field traditionally reserved to the State's police powers, because the Savings Clause of the Federal Power Act says that that wasn't Congress's intent. The – But this is going to the question of whether our cases are right or wrong. But I'm asking – trying to get you to argue within the context of the three recent cases and what their assumptions and – and principles are. Right. Right. And it seems to me that one of their principles is that providing an additional remedy is its own problem. I think that that has to do with the reading of the tariff as to the – as to field preemption, because it certainly – it certainly doesn't apply in the context of conflict preemption, because State law remedies do not stand as an obstacle to the accomplishment of the purposes of the Federal Power Act. Unless the Federal Power Act means not to have the – the questions of reasonableness of rates in the hands of a bunch of private individuals bringing lawsuits. Now, you may think that's very bad policy, but if that's the policy that's been read into the statute, then there is a conflict problem. There is no reason for a California court to pass on the reasonableness of the rates being charged, because FERC has already passed on them and found them unreasonable. The policy reason for allowing antitrust damages in this context is that FERC is already telling the State of California and is already telling the energy companies how much they're going to have to refund in the refund proceedings. That's a no-fault proceeding. If you just happen to be selling in the market, you're still going to owe refunds. So there is no inducement in the refund proceedings to conducting yourself as an ethical business organization, as you must do to do business in California. So a treble damages remedy under the Cartwright Act allows California to punish the wrongdoers under its own law by trebling the refund as to those who engaged in wrongful conduct. Kagan. Could you tell me very succinctly what distinction – let me summarize what I hear you say, that the way you think you can distinguish this case from the others is, one, because there's a pattern of conduct rather than single or wrongdoing, and, two, because of some differences in the tariffs. And I'm not sure what those are, which have to do with choice-of-law clauses. The prior courts did not consider the choice-of-law clauses of the tariffs. But they were there then. They were still there. I don't believe they were in the tariff. I don't believe they were brought to the court's attention. I haven't seen them in a year. So tell me exactly why you think that matters. Why I think that matters is that if you have a choice-of-law – And what does the choice-of-law clause say, since I don't have them in front of me? The choice-of-law clause – I understand one of them has to do with arbitration, but this isn't an arbitration. So what else? The choice-of-law clause says that the tariff is to be interpreted in accordance with the law of the State of California. Defendants have based their removal jurisdiction claim on the argument that you must look to the language of the tariff and that that raises a Federal question. If the tariff's interpretation is a matter of Federal law, I don't believe it does. I'm at a point where I've reserved some time. May I interrupt at this point or take another question? No, that's fine. Any other questions? Okay. Good morning, Your Honors. Terry Houlihan of Bingham McCutcheon, representing the Reliant Energy Defendants and Appellees, and I will be arguing this morning for the appellees. As the Court is aware from other cases on this morning's docket, there are proceedings underway at the Federal Energy Regulatory Commission addressing and resolving the disputes arising from California's so-called energy crisis. The Commission, which we all – What does that mean, so-called energy crisis? That's the way that it is – has been characterized typically in the press. Okay, so – well, we did have an energy crisis, didn't we? We did have an – we certainly did have a run-up in energy prices.  That's – I simply wanted to indicate that issues arising from those events are before FERC. This appeal, unlike the others, presents – We didn't have it in Los Angeles because we've got our own Department of Water and Power. Your Honor, that's essentially correct that the prices were not affected as much. It's also the case that with respect to the retail price, even in areas served by, for example, PG&E and Edison, because there was a retail price freeze in effect at the time, the impacts there were mitigated. There were – there were effects, but the principal impact was at the wholesale level. Another impact was not having electricity at certain times. Yes, that's certainly true. Danny Petsch. So what do you have to say about this case? So what I have to say about this case is that we just asked the Court to reaffirm once again that FERC's jurisdiction over these matters is exclusive, preempting State law. I'd like to address first the merits issues, whether the claims here are barred by preemption and filed-rate doctrines. These are not really new issues, as Your Honor observed. At least five decisions of this Court, Snohomish v. Dynegy, Grace Harbor, Lockyer v. Dynegy, the Transmission Agency of Northern California, or Tank case, and Duke v. Davis, all call for affirmance of the merits ruling below. It seems to me the most useful thing you could do is address the two points of distinction that are trying to be made here today. I'd be happy to do that. Let me say that this is the third case that I've argued before this Court on these issues. And one of those cases, Snohomish, addresses the first distinction that counsel attempted to make, namely that they have alleged a series of acts or course of conduct unlike the single problem of ancillary services addressed in the Dynegy case. In fact, in Snohomish, a broader course of conduct was also alleged and considered. Snohomish also addresses claims under California's antitrust and unfair competition laws, but tariffs governing in Snohomish were the same tariffs at issue here, tariffs that the Snohomish Court characterizes as, quote, a market-based umbrella tariff, close quote, filed by each seller, coupled with the tariffs filed by the California Power Exchange and the California ISO. The conduct alleged as the basis for the claims in Snohomish, described in that court's opinion at page 759 of 384F3rd, is essentially the conduct in wholesale electric power markets alleged here. It's the full course of conduct alleged here. It's not limited to the ancillary service markets. In Snohomish, the Snohomish Court describes the complaint in that case as alleging that these practices caused the plaintiffs, quote, to pay prices for electricity in excess of rates that would have been achieved in a competitive market, close quote. Kagan. Now, I understand their argument to be that this case could be litigated by simply accepting whatever FERC ultimately has said or ultimately says about the appropriate rate and providing an additional and different remedy. So, therefore, the State court would not be determining the reasonableness of rates. Is that plausible? And if it were true, would it matter? I don't believe it's plausible. And if it were true, it wouldn't matter. In paragraph they have to deal with the complaint that they filed. In paragraph 54 of the Pastorino complaint, for example, it alleges that the defendants exercised, quote, market power to increase prices above competitive levels, close quote. That appears in the excerpts of record tab 1, page 12. But what they're saying is, and FERC has now found that that's true, and therefore we'll never have to prove that up, which insulates at least one preemption problem, which are, which is different findings with regard by a Federal court and from a State court, from a Federal agency, because we're willing to take whatever the Federal agency decides. Assuming that that's so and there's nothing in the complaint that indicates that that would be the case, it doesn't matter. We have field preemption, which doesn't turn on whether the remedy sought accepts some sort of initial determination by FERC. As Your Honor pointed out, there, either they'll get no money, in which case this is a waste of time, or the additional remedy that they would seek under State law would directly conflict with limits that FERC determines are appropriate on the remedies and penalties that should be provided for the same conduct. All of the preemption cases and all of the filed rate cases say that's not something you can do. There's a direct conflict between the remedies when a State tries to supplement what the Federal government does in an area where it has exclusive jurisdiction. Relying in significant part on Judge Gregersen's decision in Grays Harbor, the Snohomish Court ruled that claims like the ones made here are barred by the filed rate doctrine, by field preemption, and by conflict preemption. The appellant's statement of issues on appeal lists the questions as whether its claims were properly dismissed on those same three grounds. They were properly dismissed in Snohomish, and they were properly dismissed here. Let me go to the second point of distinction, that is, the choice of law and venue provisions in the tariff. Frankly, the notion that the choice of law provision in the tariff changes preemption just doesn't work. A clause in any tariff can't carry that weight. Kagan. Well, does the choice of law provision here purport to do that, or does it just tell you how to interpret the contract, which isn't necessarily what we're doing here anyway?  As Your Honor pointed out, it's not a point of distinction with the other cases. The tariffs have been the same throughout. And as the Court pointed out in Grays Harbor, it's really Congress that drew the bright line, easily ascertained, between State and Federal jurisdiction. And quoting the Supreme Court's decision in Nantahala Power and Light, the Court there observed that FERC's jurisdiction is plenary, and Congress made it extending to all wholesale sales and interstate commerce, quote, except those which Congress has explicitly – has made explicitly subject to regulation by the States, close quote. Well, the tariff is not an act of Congress making – changing the preemption rules and making these claims subject to State law. Well, but what – is there anything wrong with saying that the contract for contract interpretation purposes is governed by State law? Is there a Federal common law of tariff interpretation? No. And indeed, the very reason for – there's nothing wrong with having State law used to interpret the contract. You're not claiming that's preempted. You're just claiming it's irrelevant. I'm sorry? You're not claiming that's preempted. You're just saying it's not pertinent here. It's not pertinent, that these are not contract claims. You're not claiming that Congress meant to preclude a choice of law clause of that kind. No.  And indeed, there is a purpose for the choice of law clauses, and they occur in a number of tariff contexts. It's an area outside the preempted field in which State law does apply. It governs contract claims between parties to a tariff that do not challenge or seek to modify tariff terms or rates. The ISO and the PX tariffs contain the core contract terms that were designed to enable the completion of transactions in the ISO and PX bid markets with minimal documentation. Such tariffs serve as part of the contract between the parties to the tariffs, and that's why the choice of law language is in there. Again, it's not a new issue. Gray's Harbor illustrates the narrow category of contract claims that could fall outside of the scope of FERC's exclusive jurisdiction. There, the Court gave the plaintiff leave to amend to allege a State law claim seeking a declaration that no contract had ever formed because of mutual mistake. That appears at page 652 of the opinion. Kagan. Is there a breach of contract claim in this complaint in this case? I'm sorry? Is there a breach of contract claim in the complaint? The plaintiffs are not parties to the tariff. Oh, I see. So the contention there is not. There are only seven. I mean, because presumably selling the same energy twice would be a breach of the contract or could be a breach of the contract, if that's what they're claiming. Yeah. But the issue there, it just illustrates how narrow the exception is, because after all, that was the explicit matter that was at issue in Dynergy. And the California Attorney General, who was the plaintiff in Dynergy, took that very same issue to FERC and lost it there. And one of the reasons that the Court was concerned in Dynergy was that FERC had looked at the same issue. So there are situations where you can't just say, well, all contract claims go to courts because they may involve contested interpretations of the tariff. They may involve attempts to change the tariff. The context in which sort of straightforward contract claims occur in state courts normally are something as straightforward as a collection action. Somebody doesn't pay the rate that the tariff provides, and a suit is filed to collect the payment. It's not the kind of complex regulatory issue that brings the commission into play. I guess to sum up on this point, the plaintiffs are not parties to the ISO or PX tariff. The plaintiffs' claims are not contract claims. The plaintiffs' claims are precisely intended to alter the rates charged to a competitive rate and seek refunds of the overcharges. And the choice of law provision simply doesn't address those kinds of claims. If Your Honor, I guess I would also say that there is a discussion in Dynergy, in footnote 25, of the interplay between the Supreme Court's decisions in Arkansas-Louisiana Gas Company v. Hall and the Supreme Court decision in Pan Am that explains in some way this distinction between the contract jurisdiction state courts and the role of FERC. Let me make one other quick comment on a decision of this Court that is discussed in the reply brief of the appellants, and that is Lockyer v. FERC, a decision determining that FERC had the authority to approve market-based rate contracts, but also ruling that the Commission had the authority to make available certain retroactive remedies that the Commission had previously held it did not have authority to grant. Lockyer v. FERC doesn't change the preemption rules. It doesn't discuss preemption. It doesn't mention Dynergy except to refer to it as a source of background information on the circumstances that led to the disputes. And it actually confirms that the filed rate doctrine applies in this case, because it did uphold that FERC had authority to issue the market-based rates. And its analysis assumes that the filed rate doctrine would apply, regardless of whether or not the regulated companies were complying with reporting requirements. If you look at the discussion at page 383, F3, at 1016, the Court reasoned that FERC must have the power to order retroactive refunds in that particular circumstance, because, quote, if no retroactive refunds were legally available, then the refund mechanism under a market-based tariff would be illusory. Parties aggrieved by the illegal rate would have no ---- I think those retroactive remedies aren't going to go to the same people that are seeking retroactive remedies here, right? Because they're not going to go to the same people. Well, that's true of all the remedies. I mean, there's no distinction here between retroactive and illegal. I just have a hard time seeing, for many reasons, the relevance of Locke here. But in particular, it's not. Well, fine. It's not. Because whatever ---- I mean, it may have altered the substantive rules, but that doesn't matter. If anything, I guess this is what you're saying. It provided more realm for Federal remedies instead of less. Right. Let me go briefly to removal and whether or not the decision denying remand below is correct. The fact that the complaint on its face implicates alleged violations of a FERC tariff triggers the special jurisdiction provision in the Federal Power Act, 16 U.S.C. Section 825P, as Dinergy holds. As long as you're talking, and this is, again, about things that we've already decided, I have a hard time understanding how you can remove a case to Federal court, district court, which doesn't belong in ---- as to which there's no jurisdiction in Federal district court because there's jurisdiction in the Federal appellate court. So it's a little bit peculiar. I understand we've done this and it doesn't seem to bother anybody, but you have a case in State court which ---- as to which there isn't jurisdiction in Federal district court. Is that right? Well, I think ---- Or in any Federal appellate court. There's jurisdiction in FERC. So what's the point of removing it to Federal court? Suppose that what the plaintiff had ---- I think this is the best way I can answer this. Suppose that what the plaintiff alleged is a violation of the Federal Power Act. Didn't say anything about California law. Filed a case in Federal court. Would the Federal court have jurisdiction over that claim? Well, it would be ---- So you think maybe there would be jurisdiction, but it would be substantively preemptive. Well, there would be jurisdiction, but the plaintiff does not have a private right of action under the Federal Power Act to enforce it. So what we're saying is, as a matter of law, because you've alleged a Federal tariff violation, you've alleged a claim that 16 U.S.C. section 825P says is a Federal claim that has to go to Federal court. Now, you have some problems because if you treat it as a Federal claim, you don't have a private right of action. That's never an issue that's been raised and argued, but that's the answer. And then secondly, because you asserted it as a State law claim, it's really in substance a Federal claim. You can't do that. And the law says we have to consider it as a State claim and it's preemptive. I guess I'd like to make the point that the distinction that we are dealing here with the course of conduct and not sort of a single area of ancillary service violations. And by the way, those weren't single – it wasn't a single act. It was a whole series of alleged violations of ancillary service rules. It doesn't distinguish as far as surgical the NASD, 159F3-1209, because there, there were claims in addition to the underlying Securities Act claim at issue. I'd also like to say that the tariff venue provisions don't impact removal. That's another argument made in the reply brief. If you look at the language of the venue provision, it explicitly contemplates a suit in Federal court located in California. The case was removed to a Federal court located in California. And therefore, the removal was fully consistent with the language of the venue provision in the tariff. And I would close on this point by pointing out that regardless of how one reads the venue provision in the tariff, 16 U.S.C. Section 825P is an express grant by Congress of Federal – two Federal courts of exclusive jurisdiction over alleged tariff violations. And neither FERC nor the parties to the tariff have the power to limit Federal court jurisdiction expressly granted by Congress. Thank you. Thank you. Rebuttal? Thank you. I have a few quick points, and then I'm happy to address Judge Bergeron's additional questions. The choice of the forum and choice of law clause of the tariff states, the ISO tariff shall be governed by and construed in accordance with the laws of the State of California except its conflict of laws provisions. That language does not limit the choice of law clause to contract disputes between sellers. It's illogical to suggest that you can, on the one hand, say that you're trying to enforce a tariff obligation, and on the other, say that the very language of the tariff that defeats your argument doesn't apply. And the same thing applies with respect to the venue clause. It says any legal action or proceeding arising under or relating to this ISO tariff shall be brought in any court of the State of California or any Federal court of the United States of America located in the State of California. 825. What's the venue problem? It isn't a Federal court in the State of California. The issue is whether the Federal court has original jurisdiction over the action. We don't believe that the exclusive jurisdiction provision 825P governs because it relates to actions based on violation of the tariff. This action is based on violation of State law under Caterpillar. We have chosen our State law claim rather than to try to pursue a Federal claim. The Pan American makes it clear that you don't have removal jurisdiction under a Federal statute when the Federal statute doesn't provide a corresponding State law remedy. And what distinguishes SPARTA is that in SPARTA, all that was an issue was compliance with listing regulations that were exclusively governed by the SEC. The issue here is not rates. The issue is conduct. It is was your conduct unfair? Was it unreasonable? Was it fraudulent? We are not asking to set rates. That's what FERC does. Ottertail says that you can challenge behavior that violates the antitrust laws, and that is what we are doing. The Pastorino plaintiffs are retail consumers. They are not subject to FERC jurisdiction in any respect whatsoever. The Grays Harbor decision was a contract case. As you know, Judge Pegerson, the plaintiff wanted to get out of a contract entered into at the height of the energy crisis. And that is a different situation from this situation because there was a Federally filed tariff, a Federally filed contract that made the agreement about what was going to happen rate-wise explicit. Here we have conduct that clearly violates the tariff, and there is no conflict preemption because there is no current actual conflict that the defendants have pointed to. They are pointing to a hypothetical future contract conflict. Excuse me. That's not enough. They are they have not told you when FERC told them they could manipulate the energy markets, and California v. FERC is or Lockyer v. FERC or Lockyer II, as Snohomish refers to it in its briefing, is relevant for the proposition that you cannot manipulate the marketplace under the guise of a Federally sanctioned tariff. Exactly, and that the Federal FERC can do something about it if you do. So why doesn't it make it more preemptive, not less? Because as a California retail consumer, the Pastorino plaintiffs, as California retail consumers, they have no right of action against FERC. And FERC does not address the wrongfulness of the conduct in the way that California law does, in the way that California's historic has historically exercised its police powers to do. And that is, that's a power reserved to California under the Savings Clause of the Federal Code. I want to address briefly Duke v. Davis and Tank, and that goes to the issue of conflict preemption. As you know, Judge Berzon, the conduct in Tank, the transmission agency of Northern California, was explicitly permitted. This was not, in this case, it wasn't permitted. I think that I am running out of time. I'd like to thank the panel. We'll give you another minute or so, if you like. Okay. So it reminded me of Shirley Hufstedler standing there. Thank you. The fact that FERC has the authority to make available retroactive remedies doesn't change the rules of preemption. That's correct. But it doesn't mean that you are excused from filing your rates with FERC. And that's what Lockyer v. FERC stands for. Here we have defendants who are coming in under the guise of a hypothetical conflict. They can't tell us why the conduct alleged was permitted by FERC. They can't tell us that they filed their rates in the manner that Lockyer v. FERC says that they must. And they cannot tell us, they cannot tell you that. I understand that they are essentially arguing field preemption more than conflict preemption. And field preemption is not a correct analysis because there is an explicit savings clause in the Federal Power Act. Well, rate doctrine is essentially a field preemption doctrine. And there's a field preemption doctrine also. I read it as more of a conflict preemption doctrine. I read it, the origins of KEO are that you can't charge a customer anything but the tariff rate. When you go into the market-based tariff rate setting context, you have to look at you cannot demand a behavior that the tariff either prohibits and you cannot prohibit a behavior that the tariff demands. They haven't shown that any of the behaviors in question were demanded by the tariff. And that's why the filed rate doctrine doesn't apply. As to whether the tariff occupies the field, the choice of law clause speaks for itself. It doesn't. Okay. Thank you. Thank you very much. This matter will stand submitted. And we'll now come to the second item on the calendar, Public Utility District number one of Sonoma County, Washington, and others versus Federal Energy Regulatory Commission. Thank you, Your Honor. Thank you. I'll introduce my colleagues in the course of my first minute or two as we establish the number of cases that we have and the arguments. So I'll be introducing each of them. We really have three separate cases here today which have some significantly
judges: Browning, Pregerson, Berzon